IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 18-50492
_____

D.C. Docket No. 3:17-CR-2663-1

United States Court of Appeals
Fifth Circuit

**FILED**
May 8, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

    Plaintiff - Appellee

v.

JOSE FRANCIS YANES-MANCIA,

    Defendant - Appellant

Appeal from the United States District Court for the
Western District of Texas

Before KING, HIGGINSON, and COSTA, Circuit Judges.

J U D G M E N T

This cause was considered on the record on appeal and was argued by counsel.

It is ordered and adjudged that the judgment of the District Court is affirmed.

**Certified as a true copy and issued
as the mandate on May 30, 2019**

Attest: *Lyle W. Cayce*
**Clerk, U.S. Court of Appeals, Fifth Circuit**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 18-50492

United States Court of Appeals
Fifth Circuit
**FILED**
May 8, 2019
Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

    Plaintiff - Appellee

v.

BLANCA NIEVE VASQUEZ-HERNANDEZ,

    Defendant - Appellant

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee

v.

ELBA LUZ DOMINGUEZ-PORTILLO

    Defendant - Appellant

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee

v.

MAYNOR ALONSO CLAUDINO LOPEZ,

    Defendant - Appellant

---

No. 18-50492

UNITED STATES OF AMERICA,

       Plaintiff - Appellee

v.

JOSE FRANCIS YANES-MANCIA,

       Defendant - Appellant

---

UNITED STATES OF AMERICA,

       Plaintiff - Appellee

v.

NATIVIDAD ZAVALA-ZAVALA,

       Defendant - Appellant

---

Appeal from the United States District Court
for the Western District of Texas

---

Before KING, HIGGINSON, and COSTA, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

    In unrelated incidents between October 21, 2017 and October 23, 2017, Appellants Blanca Nieve Vasquez-Hernandez, Elba Luz Dominguez-Portillo, Maynor Alonso Claudino-Lopez, Jose Francis Yanes-Mancia, and Natividad Zavala-Zavala were each apprehended by Customs and Border Protection (CBP) soon after entering the United States from Mexico. Appellants, citizens of Honduras and El Salvador, were each accompanied by a minor child (in one appellant's case, a grandchild).[1] Appellants stated to CBP during initial

---

[1] The children ranged between 7 and 16 years old.

Case: 18-50492    Document: 00514976015    Page: 3    Date Filed: 05/30/2019
Case 3:17-cr-02663-KC   Document 18   Filed 05/30/19   Page 4 of 15

No. 18-50492

processing that they feared persecution in their home countries. They were arrested, charged with misdemeanor improper entry under 8 U.S.C. § 1325(a), and detained in El Paso. The government did not detain the children with their parents, but instead transferred the children to the custody of the Office of Refuge Resettlement (ORR) in the U.S. Department of Health and Human Services.[2]

Before July 2017, children were typically only referred to ORR when they entered without a parent or guardian. U.S. DEP'T HEALTH HUMAN SERVS. OFFICE OF INSPECTOR GENERAL, *Separated Children Placed in Office of Refugee Resettlement Care*, 3 (Jan. 2019), https://oig.hhs.gov/oei/reports/oei-BL-18-00511.pdf. Before July 2017, "some children [were] referred to ORR after being separated by DHS from a parent . . . with whom the child arrived. Historically, these separations were rare and occurred because of circumstances such as the parent's medical emergency or a determination that the parent was a threat to the child's safety." *Id.* However, between July and November 2017, the El Paso sector of CBP "implemented new policies that resulted in 281 individuals in families being separated." *Id.* It was during this period that Appellants arrived with their children. Appellants' immigration forms indicate that they were separated from their children not because of a medical emergency or safety concern, but because of the parents' impending prosecutions.

A magistrate judge convicted and sentenced Appellants after bench trials where Appellants stipulated to facts establishing all the elements of a §

---

[2] *See* 8 U.S.C. § 1232(b)(3) ("Except in the case of exceptional circumstances, any [federal] department or agency . . . that has an unaccompanied alien child in custody shall transfer the custody of such child to the Secretary of Health and Human Services."). ORR is tasked with "coordinating and implementing the care and placement of unaccompanied alien children who are in Federal custody by reason of their immigration status." 6 U.S.C. § 279(b)(1). As charged by statute, ORR has developed and implemented its own policies for the care, placement, and release of children.

Case: 18-50492 Document: 00514976015 Page: 4 Date Filed: 05/30/2019
Case 3:17-cr-02663-KC Document 18 Filed 05/30/19 Page 5 of 15

No. 18-50492

1325(a) offense. The district court affirmed. In this consolidated appeal, Appellants argue that (1) they should not have been criminally prosecuted because they sought asylum, and (2) being separated from their children rendered their convictions constitutionally infirm.

Appellants have never disputed the sufficiency of the government's evidence. As the district court explained in its careful and detailed order affirming the convictions, "the soundness of the government's policies regarding arriving asylum seekers and their minor children is not before the Court in this appeal." We agree and affirm.

I

Appellants made their initial appearances before the same magistrate, who appointed a Federal Public Defender to represent them. On November 7, 2017, Appellants filed a consolidated motion to dismiss the criminal complaints.[3] They contended that the § 1325(a) charges were premature because their asylum claims had not yet been processed. They also argued that separation from their children would render any guilty plea involuntary, and constituted "outrageous" conduct requiring dismissal of the complaints. Appellants confirmed that they were "not seeking that the court analyzes [sic] the strength of the government's § 1325 cases against them. . . [T]he parent-defendants' guilt or innocence under § 1325 is not at issue on this motion." On November 9, 2017, the government offered Appellants plea agreements with sentences of time served. Appellants did not accept.

The magistrate set a hearing on the motion to dismiss for November 27, 2017, and set bench trials for December 1, 2017.[4] At the hearing on the motion

---

[3] The parties agreed that consolidation of the motion to dismiss was appropriate because Appellants were similarly situated and the relevant factual circumstances were straightforward.

[4] The magistrate's jurisdiction over Appellants' misdemeanor proceedings rested on 18 U.S.C. § 3401(a).

4

Case: 18-50492    Document: 00514976015    Page: 5    Date Filed: 05/30/2019
Case 3:17-cr-02663-KC   Document 18   Filed 05/30/19   Page 6 of 15

No. 18-50492

to dismiss, Appellants raised two new arguments. First, they argued that because their children were material witnesses, going to trial without the children present would violate due process. Second, Appellants contended that conviction and deportation would unconstitutionally terminate their parental rights. At the end of the hearing, the magistrate denied the motion to dismiss.[5]

At their individual bench trials, Appellants all stipulated to facts and evidence establishing all the elements of a § 1325(a) offense. Appellants did not testify and did not present any affirmative defenses. The magistrate found Appellants guilty and sentenced each to one year of non-reporting probation. Appellants moved for reconsideration, which the magistrate denied on January 12, 2018.

Appellants' appeals to the district court were consolidated. While the appeal was pending, four of the five (all but Vasquez-Hernandez) were found inadmissible under 8 U.S.C. § 1182 and deported, apparently without their children. Vasquez-Hernandez was released on immigration bond on February 21, 2018. On June 11, 2018, the district court affirmed the convictions. In a detailed order, the district court examined Appellants' arguments and found no basis for reversing their convictions. This timely appeal followed.

II

This appeal concerns the district court's affirmance of the misdemeanor convictions and sentences imposed by the magistrate. We therefore "review the magistrate judge's findings of fact for clear error and conclusions of law de novo." *United States v. Hollingsworth*, 783 F.3d 556, 558 (5th Cir. 2015).

Appellants seek to challenge their convictions on six grounds: (1) separation from their children was pre-trial punishment that violated due

---

[5] The magistrate issued an opinion explaining the denial of the motion to dismiss on January 5, 2018.

Case: 18-50492     Document: 00514976015     Page: 6     Date Filed: 05/30/2019
Case 3:17-cr-02663-KC   Document 18   Filed 05/30/19   Page 7 of 15

No. 18-50492

process; (2) the convictions violated the Eighth Amendment because they resulted in Appellants' deportation and continued separation from their children; (3) separation was outrageous government conduct and the criminal complaints should have been dismissed; (4) separation violated Appellants' rights to exculpatory evidence; (5) separation deprived Appellants of a fair trial; and (6) separation violated Appellants' rights against self-incrimination. None of these arguments is persuasive.

*A. Pre-trial punishment*

Appellants say that because they "were *bona fide asylum seekers*," it was impermissible pre-trial punishment for the government to detain them pending criminal prosecution and thereby separate them from their children. Yet Appellants do not challenge the government's contention that once the parents were arrested and detained in adult facilities, their children became "unaccompanied" for purposes of § 1232(b)(3). *See* 6 U.S.C. § 279(g)(2) (defining "unaccompanied alien child" in relevant part as a child under 18 years of age with "no lawful immigration status," for whom "no parent or legal guardian in the United States is available to provide care and physical custody").

Instead, Appellants respond that the government's decision to initiate criminal proceedings was unjustifiable because they were "bona fide asylum seekers." Relying on 8 U.S.C. § 1225(b)(1)(A)(ii), Appellants assert that they had rights to an asylum hearing *before* any criminal proceedings could be initiated, and that if they had been granted asylum, they would have been immunized from prosecution for improper entry. Section 1225(b)(1)(A)(ii) provides, "If an immigration officer determines that an alien . . . is inadmissible . . . and the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution, the officer *shall* refer the alien for an interview by an asylum officer." (emphasis added). Emphasizing that "shall" is mandatory, Appellants conclude that "[s]eparating Appellants from their

Case: 18-50492   Document: 00514976015   Page: 7   Date Filed: 05/30/2019
Case 3:17-cr-02663-KC   Document 18   Filed 05/30/19   Page 8 of 15

No. 18-50492

minor children was a restriction or condition not reasonably related to Congressional goals regarding asylum law and it punished Appellants."

Nothing in § 1225(b)(1)(A)(ii) prevents the government from initiating a criminal prosecution before or even during the mandated asylum process. Nor have Appellants shown that qualifying for asylum would be relevant to whether they improperly entered, since § 1325(a) applies to "[a]ny alien" who "enters or attempts to enter the United States at any time or place other than as designated by immigration officers." Appellants stipulated that they were aliens and entered the United States at a place that was not a port of entry. Qualifying for asylum under 8 U.S.C. § 1158 would not change Appellants' alien status. *See* 8 U.S.C. § 1101(a)(3) (defining "alien" as "any person not a citizen or national of the United States"). Indeed, only "aliens" can apply for asylum under 8 U.S.C. § 1158(a)(1).

Using similar logic, this court in an unpublished decision concluded that the government's failure to refer a defendant to an asylum officer for a reasonable fear determination was not grounds for dismissing his indictment for illegal reentry. *United States v. Brizuela*, 605 F. App'x 464, 465 (5th Cir. 2015). In *Brizuela*, the court concluded that even if the government had failed to comply with a regulation mandating a reasonable fear interview,

> such a violation has no relevance to the prosecution for illegal reentry. No legal authority mandates a pause to criminal proceedings until the reasonable-fear interview takes place. . . . [The regulation] does not restrict the time to bring criminal charges relative to the time of referral, nor does it prescribe some collateral impact on criminal proceedings if the government fails to follow the regulation. And the outcome of those civil proceedings would have no effect on Brizuela's criminal case. . . . With no legal authority requiring a halt on a separate track of the legal system, dismissing the indictment on this basis would have been error.

*Brizuela*'s reasoning is persuasive and directly applicable here.

Case: 18-50492 Document: 00514976015 Page: 8 Date Filed: 05/30/2019
Case 3:17-cr-02663-KC Document 18 Filed 05/30/19 Page 9 of 15

No. 18-50492

B. *Eighth Amendment*

Appellants argue that being deported without their children has resulted in "permanent separation" amounting to cruel and unusual punishment. But on this record, deportation was not a punishment imposed or even caused by Appellants' § 1325(a) misdemeanor convictions. Rather, the four deported appellants were found inadmissible during post-conviction civil immigration proceedings.

To be sure, the Supreme Court has warned that deportation in the civil context sometimes cannot be disentangled from criminal punishment. In *Padilla v. Kentucky*, 559 U.S. 356, 365 (2010), the Court found that the Sixth Amendment's guarantee of effective assistance of counsel requires, at a minimum, criminal counsel to "give correct advice" "when the deportation consequence [of a conviction] is truly clear." *Id.* at 369. The Court reasoned that even though deportation "is not, in a strict sense, a criminal sanction," and "removal proceedings are civil in nature," "deportation is nevertheless intimately related to the criminal process. . . . [I]mportantly, recent changes in our immigration law have made removal nearly an automatic result for a broad class of noncitizen offenders." *Id.* at 365-66. *Padilla* was specifically concerned with cases where deportation is "a consequence of a criminal conviction." *Id.* at 366.

Appellants frame their appeal as though they were deported pursuant to criminal proceedings, but they have not shown that deportation was caused by their § 1325(a) convictions. Appellants do not argue, for instance, that their convictions rendered them inadmissible under Section 212. *See, e.g.*, 8 U.S.C. 1158(b)(2). Nor do Appellants argue that their § 1325(a) convictions make it

8

more difficult for them to locate and regain custody of their children. Their Eighth Amendment claims fail.

### C. Outrageous government conduct

Appellants contend that family separation was "so outrageous that due process principles would absolutely bar the government from invoking judicial process to obtain a conviction." *United States v. Russell,* 411 U.S. 423, 431–32 (1973); *see Rochin v. California,* 342 U.S. 165, 172 (1952) (holding that "forcible extraction" of defendant's stomach to recover narcotics "shock[ed] the conscience" and was a method "too close to the rack and the screw to permit of constitutional differentiation").

"The standard for proving outrageous governmental conduct is extremely demanding." *United States v. Sandlin,* 589 F.3d 749, 758 (5th Cir. 2009). We have "declined to find outrageous conduct where the Government failed to disclose that the defendant's signature on a particular document was forged; engaged in entrapment; or abducted the defendant from his home country to circumvent extradition proceedings." *Id.* at 759 (citing *United States v. Mauskar,* 557 F.3d 219, 231–32 (5th Cir. 2009), *Stokes v. Gann,* 498 F.3d 483, 485 (5th Cir. 2007), and *United States v. Chapa–Garza,* 62 F.3d 118, 121 (5th Cir. 1995)); *see also United States v. Wilson,* 732 F.2d 404, 411 (5th Cir. 1984) (declining to find outrageous conduct where the government played a "nonviolent trick" to get defendant into custody). Appellants do not cite any Fifth Circuit case where an indictment was dismissed or a conviction reversed based on the outrageous conduct doctrine. *Cf. United States v. Nolan-Cooper*, 155 F.3d 221, 229–30 (3d Cir. 1998) (concluding that "the viability of the doctrine is hanging by a thread" and that "courts have rejected its application with almost monotonous regularity") (citations omitted).

As explained above, Appellants have not challenged the government's justification for detaining them during criminal prosecution and pending trial.

9

Case: 18-50492	Document: 00514976015	Page: 10	Date Filed: 05/30/2019
Case 3:17-cr-02663-KC   Document 18   Filed 05/30/19   Page 11 of 15

No. 18-50492

Further, as discussed below, the record does not suggest that separating the children from Appellants aided the government in obtaining convictions. We therefore will not reverse Appellants' convictions based on the outrageous government conduct doctrine.

   *D. Right of access to evidence*

Appellants argue that the government refused to disclose the children's location and that this refusal violated their rights in "what might loosely be called the area of constitutionally guaranteed access to evidence." *United States v. Valenzuela–Bernal*, 458 U.S. 858, 867 (1982).

First, Appellants argue that the government violated *Brady v. Maryland*, 373 U.S. 83, 87 (1963), because the children could have testified as to their parents' well-founded fear of returning home to "horrible violence in their Central American countries." They contend that such testimony would have been relevant to a duress defense.[6]

*Brady* requires a showing that "(1) the evidence at issue was favorable to the accused, either because it was exculpatory or impeaching; (2) the evidence was suppressed by the prosecution; and (3) the evidence was material." *United States v. Cessa*, 861 F.3d 121, 128 (5th Cir. 2017) (quotation omitted). The materiality requirement applies even where the witness is unavailable to the defendant. *Valenzuela-Bernal*, 458 U.S. at 870 (unavailability "may well support a relaxation of the specificity required in showing materiality" but does not "afford[] the basis for wholly dispensing with such a showing"). The government "bears no responsibility to direct the defense toward potentially exculpatory evidence that is either known to the defendant

---

[6] Appellants did not actually raise defenses of duress below. In moving for judgments of acquittal, they argued only that the children were key material witnesses to a *potential* duress defense. They declined to testify themselves on duress, arguing that doing so "forces the defendants to take the stand in order to establish their defense and so there is prejudice."

Case: 18-50492    Document: 00514976015    Page: 11    Date Filed: 05/30/2019
Case 3:17-cr-02663-KC   Document 18   Filed 05/30/19   Page 12 of 15

No. 18-50492

or that could be discovered through the exercise of reasonable diligence." *United States v. Sipe*, 388 F.3d 471, 478 (5th Cir. 2004); *see also Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994) ("*Brady* claims involve 'the discovery, after trial of information which had been known to the prosecution but unknown to the defense.'") (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976)).

Here, Appellants knew what the children would have testified to. Yet, as the district court observed, Appellants "made [no] effort to call the children as witnesses" during their bench trials, did not "request[] that the children be made available so they could be interviewed by counsel," and did not "attempt[] to subpoena them." Nor did Appellants request a continuance of trial pending their ability to obtain the children's testimony. There was therefore no *Brady* violation. *See Lensing*, 42 F.3d at 258 (no *Brady* claim where evidence was disclosed at trial and counsel opted not to seek a recess or continuance).

Moreover, the children's testimony would not have been material to a duress defense. Testimony about conditions in Honduras and El Salvador would not have established an affirmative defense of duress, which requires, among other elements, a "present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury" and "no reasonable legal alternative to violating the law." *United States v. Posada-Rios*, 158 F.3d 832, 873 (5th Cir. 1998) (quotations omitted). The district court correctly reasoned that Appellants' proposed duress defense was "rooted in the danger they faced in their home countries, not at the time of crossing the border into the United States. Nothing suggests that those dangers followed them to the border," and there was "no basis to believe that Appellants did not have a reasonable legal alternative to crossing the border into the United States at an undesignated place." *See also United States v. Ramirez-Chavez*, 596 F. App'x 290, 293 (5th Cir. 2015) (no duress defense to

improper entry where defendant was kidnapped, beaten, and ransomed and defendant waded across the Rio Grande into the United States "several minutes" after escaping from captivity).

Second, Appellants contend that the government suppressed the children's testimony in bad faith, violating their due process rights under *California v. Trombetta*, 467 U.S. 479 (1984). This argument is also foreclosed by the fact that Appellants took no steps to secure the children's presence at trial. Even so, we note that Appellants misread *Trombetta*. There, the Court examined "the government's duty to take affirmative steps to *preserve* evidence on behalf of criminal defendants," evidence capable of being "*destroyed* through prosecutorial neglect or oversight." *Id.* at 486 (emphasis added). In other words, *Trombetta* dealt with the government's duties to preserve physical evidence—in Trombetta's case, breath samples taken prior to his arrest and conviction for drunk driving. The children's testimony was not physical evidence capable of being destroyed by the government.

### E. Fair trial

Appellants argue that they were deprived of a fair trial because their children "could have testified to corroborate 'credible fear claims' that prompted Appellants to flee from their countries." The fair trial claim simply repackages the *Brady* claim and fails for the same reasons.

### F. Self-incrimination

Finally, Appellants assert that the government impermissibly burdened their right to not testify at one's own criminal trial. *See Brooks v. Tennessee*, 406 U.S. 605, 610–11 (1972). They argue that family separation was a coercive practice that pressured Appellants to testify as to duress, and thereby incriminate themselves.

The self-incrimination claim fails because, as with the *Brady* claim, nothing in the record suggests that the government prevented the children

Case: 18-50492      Document: 00514976015      Page: 13      Date Filed: 05/30/2019
Case 3:17-cr-02663-KC   Document 18   Filed 05/30/19   Page 14 of 15

No. 18-50492

from testifying. Although the prosecution did not disclose where the children were located, Appellants made no effort to subpoena the children as witnesses, did not seek alternate testimony, and did not request a continuance. Nothing in the record indicates that the government exerted undue pressure on Appellants to testify, whether intentionally or through a policy of family separation.

### III

For the foregoing reasons, we AFFIRM.

# *United States Court of Appeals*

**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

May 30, 2019

Ms. Jeannette Clack
Western District of Texas, El Paso
United States District Court
525 Magoffin Avenue
Room 108
El Paso, TX 79901-0000

    No. 18-50492    USA v. Blanca Vasquez-Hernandez, et al
                           USDC No. 3:17-CR-2660-1
                           USDC No. 3:17-CR-2661-1
                           USDC No. 3:17-CR-2662-1
                           USDC No. 3:17-CR-2663-1
                           USDC No. 3:17-CR-2664-1

Dear Ms. Clack,

Enclosed are copies of the judgments issued as the mandate and a copy of the court's opinion.

                                        Sincerely,

                                        LYLE W. CAYCE, Clerk

                                        By: _____
                                        Debbie T. Graham, Deputy Clerk

cc:
    Ms. Maureen Scott Franco
    Mr. Sergio Garcia
    Mr. Joseph H. Gay Jr.
    Mr. Mark Randolph Stelmach